UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **KELLY PINN**, *on behalf of herself and others similarly situated,*<br><br>*Plaintiff*,<br><br>v.<br><br>**LIVE CALLS NETWORK, LLC**,<br><br>*Defendant*. | Case No.: 8:23-CV-02927<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

**Nature of this Action**

1. This action arises out of Defendant, Live Calls Network, LLC's ("LCN" or "Defendant") relentless marketing practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA").

2. LCN makes aggressive unsolicited telemarketing calls soliciting individuals in need of legal services so that LCN can sell the leads to third parties.

3. These calls are made to individuals on the National Do-Not-Call Registry.

4. LCN continues to make these calls even after the called party requests that LCN cease calling.

5. The TCPA prohibits making telemarketing calls to individuals who have registered their telephone numbers on the National Do-Not-Call Registry.

6. The TCPA also prohibits making telemarketing calls to a person who, like Ms. Pinn, has previously asked not to receive such calls and makes sellers like LCN for calls in violation of the TCPA's internal do-not-call rules.

7. Accordingly, Plaintiff Kelly Pinn ("Plaintiff" or "Ms. Pinn") brings this action on behalf of herself and classes of similarly situated individuals.

**Jurisdiction and Venue**

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

9. This Court has jurisdiction over LCN because LCN resides in this District, conducts business transactions in this District and made calls from this District as part of the business it conducts in this District.

10. Venue is proper in this District because LCN is located in this District and because some of the wrongful conduct giving rise to this case occurred in and/or emanated from this District.

**Parties**

11. Plaintiff Kelly Pinn is a natural person who at all relevant times resided in Fort Worth, Texas.

12. Ms. Pinn is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

13. LCN is a limited liability company organized and existing under the laws of the State of Delaware, with headquarters located at 10319 Westlake Drive, Suite 450, Bethesda, MD 20187.

14. Defendant is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

**TCPA Background**

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

16. Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

17. These regulations are codified at 47 C.F.R. §§ 64.1200(e)(1-2).

18. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

19. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

20. The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

21. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and

"develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.*

22. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

23. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

24. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

25. These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

26. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

27. These policies and procedures prohibit a company from making calls for

telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

28. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

29. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> Section 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

30. These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

to comply with either is distinct a violation of 47 U.S.C. § 227(c).

31. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 CFR. § 64.1200(e).

32. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

33. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

**Factual Allegations**

34. Ms. Pinn is the sole and customary user of a cellular telephone number (XXX)-XXX-2161.

35. Ms. Pinn's cellular telephone number (XXX)-XXX-2161 is used for residential purposes and is not associated with a business.

36. Ms. Pinn's cellular telephone number (XXX)-XXX-2161 has been on the National Do-Not-Call Registry since February 9, 2009.

37. Ms. Pinn personally placed his cellular telephone number (XXX)-XXX-2161 on the National Do-Not-Call Registry because she did not want unsolicited telemarketing calls or texts, such as the ones at issue here.

38. On or about May 19, 2023, Ms. Pinn began receiving telephone calls from Defendant soliciting legal services.

39. These calls came from changing ten-digit numbers, which were likely "spoofed."

40. For example, on May 19, 2023 at 9:37 am CST, Ms. Pinn received a call from telephone number (210) 953-5751.

41. When Ms. Pinn answered the phone, the caller advised that he was calling from the "Accidental Claim Helpline" and stated that he was calling in regard to Ms. Pinn's previous car accident.

42. Ms. Pinn advised the individual that she did not have any car accidents and to stop calling.  Ms. Pinn then terminated the call.

43. On May 19, 2023 at 3:19pm CST, Ms. Pinn received another call from Defendant.

44. This call came from (986) 229-0171.

45. When Ms. Pinn answered the phone, the caller advised that he was calling from the "Accidental Claim Helpline" and stated that he was calling in regard to Ms. Pinn's previous car accident.

46. Ms. Pinn again requested that Defendant stop calling and terminated the call.

47. On May 19, 2023 at 4:41 pm CST, Ms. Pinn received another call from Defendant.

48. This call came from (727) 361-2423.

49. When Ms. Pinn answered the phone, the caller advised that he was calling from the "Accidental Claim Helpline" and stated that he was calling in regard to Ms. Pinn's previous car accident.

50. Tired of the calls, and in an effort to have the calls stop, Ms. Pinn engaged with the caller to identify the company or individuals behind the calls, so that she could send a written complaint to the company about the calls.

51. The initial caller transferred Ms. Pinn to his "senior supervisor" who requested more information about a car accident.

52. The senior supervisor stated he was with "Injury Claim Services."

53. Upon information and belief, Defendant uses names like "Accidental Claim Helpline" and "Injury Claim Services."

54. The "senior supervisor" ultimately terminated the call and stated that Ms. Pinn was wasting his time as she kept asking for information about the company he was with.

55. On May 30, 2023, Ms. Pinn received another call from Defendant.

56. This call came from (860) 864-8869.

57. When Ms. Pinn answered the phone, the caller advised that he was calling from the "Accidental Claim Helpline" and stated that he was calling in regard to Ms. Pinn's previous car accident.

58. Again, in an effort to have the calls stop, Ms. Pinn engaged with the caller to identify the company or individuals behind the calls, so that she could send a written complaint to the company about the calls..

59. The initial caller transferred Ms. Pinn to his "senior supervisor" who requested more information about a car accident.

60. The "senior supervisor" transferred Ms. Pinn to a female individual with a third-party company that stated she would take some additional information from Plaintiff then attempted to connect her with an attorney.

61. Following the call, Ms. Pinn wrote to the third-party company to complain about the illegal calls she received.

62. On June 13, 2023 at 9:12am CDT, Ms. Pinn received another call from Defendant.

63. This call came from (817) 570-0217.

64. When Ms. Pinn answered the phone, the caller advised that he was calling from the "Accidental Claim Helpline" and stated that he was calling in regard to Ms. Pinn's previous car accident.

65. The initial caller transferred Ms. Pinn to his "senior supervisor" who requested more information about a car accident.

66. The "senior supervisor" transferred Ms. Pinn to a female caller who stated she was with the same third-party company she was connected to during the May 30, 2023 call.

67. Ms. Pinn asked for that company's website and the female caller provided it. Ms.

Pinn then stated she would review the site and call back if interested but didn't need any call backs.

68. On June 16, 2023 at 3:19pm CDT, Ms. Pinn received another call from Defendant.

69. This call came from (631) 314-7114.

70. When Ms. Pinn answered the phone, the caller advised that he was calling from the "Accidental Claim Helpline" and stated that he was calling in regard to Ms. Pinn's previous car accident.

71. The initial caller transferred Ms. Pinn to his "senior supervisor."

72. The senior supervisor asked if he was speaking with "Kelly."

73. When Ms. Pinn confirmed that the senior supervisor was speaking with her, the "senior supervisor" began verbally attacking Ms. Pinn with offensive, harassing, profane language that included racial slurs highly offensive to African Americans.

74. Upon information and belief, the senior supervisor's offensive tirade was in direct response to Ms. Pinn complaining about the calls to the third-party company on May 30, 2023.

75. Ms. Pinn contacted the third-party company following this call and requested that the third-party company identify the company or persons responsive for the calls she received.

76. The third-party company advised Ms. Pinn that Defendant LCN was responsible for the calls she received.

77. Ms. Pinn did not provide prior express invitation or permission or consent for

these telephone calls.

78. To the contrary, in response to the unwanted calls, Ms. Pinn repeatedly requested that they stop.

79. Defendant, did not have written do-not-call policies or procedures at the time of the calls it made to Ms. Pinn and the classes defined below.

80. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the continued telephone calls to Ms. Pinn after she directly asked not to be contacted.

81. Defendant's violations were negligent.

82. Alternatively, Defendant's violations were willful and knowing.

83. Ms. Pinn and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, Defendant's calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities to address the unwanted telephone calls. Defendant's telephone calls and text messages were annoying and a nuisance, and wasted the time of Ms. Pinn and the class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

**DEFENDANT'S LIABILITY**

84. Defendant used automated systems to make outbound telephonic sales calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

85. Defendant made two or more telephone solicitations to Ms. Pinn, whose number was on the National Do-Not-Call Registry at the time of the telephone calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

86. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Pinn is entitled to $500 per call through 47 U.S.C. § 227(c).

87. Ms. Pinn is entitled to $1,500 per call if Defendant's actions are found to be knowing or willful.

88. Defendant placed two or more telemarketing calls to Ms. Pinn, despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

89. Accordingly, for violations of 47 C.F.R. § 64.1200(d), Ms. Pinn is entitled to $500 per call through 47 U.S.C. § 227(c).

90. Ms. Pinn is entitled to $1,500 per call if Defendant's actions are found to be knowing or willful.

## CLASS ACTION ALLEGATIONS

91. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two proposed "Classes," as defined as follows:

### THE TCPA CLASSES

> Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls from four (4) years prior to the filing of the Complaint.

("Registry Class")

>Plaintiff and all persons within the United States whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period from four (4) years prior to the filing of the Complaint.

("Policy Class").

(The Registry Class and the Policy Class are collectively referred to herein as the "Classes.")

92. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

93. The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

94. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

- The time period(s) during which Defendant or its agent made the telephone calls;
- The telephone numbers to which Defendant or its agent made telephone calls;
- The telephone numbers for which Defendant had prior express written consent;
- The purposes of such telephone calls; and
- The names and addresses of Class members.

95. The Classes are comprised of hundreds, if not thousands, of individuals.

96.     There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

- Whether Defendant (or someone acting on its behalf) make telemarketing calls;

- Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

- Whether Defendant or the entities with which they contract makes solicitation calls and to telephone numbers registered on the National Do-Not-Call Registry;

- Whether Defendant had the required policies and procedures prior to making telemarketing calls;

- Whether Defendant's statutory violations were willful and knowing; and

- Whether Defendant should be enjoined from engaging in such conduct in the future.

97.     Plaintiff is a member of the Classes in that Defendant placed two or more calls for telemarketing purposes, in a one-year period to his telephone number, without her prior express written consent, after she asked Defendant to stop, and while her telephone number was on the National Do-Not-Call Registry.

98.     Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

99.     Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time

tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

100. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

101. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

102. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

103. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

104. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

105. Common questions will predominate, and there will be no unusual manageability issues.

### FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the Registry Class)

106. Plaintiff and the proposed Registry Class incorporate the allegations of paragraphs 1-103 as if fully set forth herein.

107. Defendant made, or had made on its behalf, telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

108. Plaintiff's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

109. Plaintiff and putative Registry Class Members each received two or more such calls in a 12-month period.

110. Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

111. Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
**(On behalf of Plaintiff and the Policy Class)**

112. Plaintiff and the proposed Policy Class incorporate the allegations of paragraphs 1-103 as if fully set forth herein.

113. Defendant made numerous telephone calls for telemarketing purposes to Plaintiff's and putative Policy Class Members' telephone numbers.

114. Defendant did so despite not having a written policy pertaining to "do not call" requests.

115. Defendant did so despite not having such a policy available "upon demand."

116. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

117. Defendant did so despite not recording or honoring "do not call" requests.

118. Defendant made two or more telemarketing calls to Plaintiff and putative Policy Class Members' telephone numbers in a 12-month period.

119. Plaintiff and putative Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

120. Plaintiff and putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing her counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages;

E. An award of treble damages; and

F. Such other and further relief that the Court deems reasonable and just

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated: October 27, 2023 /s/ *John T. McGowan*
John T. McGowan, Esq. Bar No. 21477
KINNER & McGOWAN PLLC
413 East Capitol Street SE, First Floor
Washington, D.C. 20003
Tel: (202) 846-7148
jmcgowan@kinnermcgowan.com

*/s/ Max S. Morgan*
Eric H. Weitz, Esquire*
Max S. Morgan, Esquire*
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com

*Counsel for Plaintiff and
the proposed classes*

(*to seek admission *pro hac vice*)